IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 19, 2017 Session

**MICHAEL JOSEPH CREWS HENSLEY v.**
**SHELLIE NICOLE BOUMA HENSLEY**

**Appeal from the General Sessions Court for Campbell County**
**No. 15138     Amanda H. Sammons, Judge**

**No. E2017-00354-COA-R3-CV**

In this post-divorce parenting dispute, the mother appeals the trial court's judgment modifying the residential co-parenting schedule and reducing the number of co-parenting days allotted to the mother from that provided in the prior permanent parenting plan. Having determined that the order appealed fails to resolve the issue of a corresponding modification in child support, we conclude that it is not a final order. Accordingly, we dismiss the appeal for lack of subject matter jurisdiction.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Terry M. Basista, Jacksboro, Tennessee, for the appellant, Shellie Nicole Bouma Hensley.

Robert R. Asbury, Jacksboro, Tennessee, for the appellee, Michael Joseph Crews Hensley.

**OPINION**

I. Factual and Procedural Background

The original plaintiff, Michael Joseph Crews Hensley ("Father"), and the original defendant, Shellie Nicole Bouma Hensley ("Mother"), were divorced by order of the Campbell County General Sessions Court ("trial court") on September 16, 2009. The court approved the parties' partial settlement as to property distribution but conducted a bench trial to address co-parenting issues concerning the parties' twin children, a boy and a girl ("collectively, the Children"), who were three years old at the time of the divorce

judgment. In a subsequent permanent parenting plan order entered June 2, 2010 ("June 2010 PPP"), the court designated Mother as the primary residential parent with all major decision-making ability, granting her 215 days of annual co-parenting time as compared to 150 days of annual co-parenting time to be enjoyed by Father.

At the time of the June 2010 PPP's entry, Father resided in Campbell County, Tennessee, and Mother had relocated to Albuquerque, New Mexico. Pursuant to the June 2010 PPP, the Children relocated to New Mexico to reside the majority of the time with Mother, but Father was allowed to exercise his co-parenting time with the Children in Tennessee. Mother was at that time and is currently employed as a licensed pharmacist. The 2010 PPP provided that Mother would pay $358.00 per month to Father in child support despite her designation as the primary residential parent. The June 2010 PPP indicated that Mother's gross monthly income was $9,833.33 while Father's gross monthly income was $2,080.00.

Upon Father's subsequent petition to modify the permanent parenting plan, an affidavit indicating Mother's consent, and an announced agreement of the parties, the trial court entered an agreed permanent parenting plan order on December 15, 2010 ("December 2010 PPP"). The court found that a material change in circumstance had occurred and that it was in the best interest of the Children to designate Father as the primary residential parent. Pursuant to the parties' agreement, the court inverted the number of annual co-parenting days originally enjoyed by each parent, with Father then having 215 days per year as compared to Mother's 150 days, and granted to Father all major decision-making authority.

Although the December 2010 PPP provided some specific co-parenting time to Mother to be exercised in New Mexico, it did not account for the full 150 days in this way. The plan included a special provision stating that Mother could visit the Children in Tennessee upon "reasonable notice" to Father, provided that her visits did not interfere with the Children's school schedule. As to child support, the December 2010 PPP indicated that Mother's gross monthly income was $6,686.00 while Father's gross monthly income was $1,368.00. Mother's child support obligation was set at $882.00 per month.

On November 25, 2013, Mother filed a petition for emergency custody, alleging, *inter alia*, that the Children were dependent and neglected due to purported environmental hazards in Father's home. The trial court entered an *ex parte* order granting Mother temporary custody on November 27, 2013. Following a hearing, the trial court approved a subsequent agreement of the parties in an order entered December 20, 2013. Pursuant to this order, the Children were returned to Father's primary custody under the December 2010 PPP, and an order of reference was made for Father's home

2

environment to be inspected. The court further directed that if no new allegations were brought as to Mother's emergency petition by March 25, 2014, the petition would be dismissed. Although the court's subsequent order dismissing the emergency petition is not included in the record on appeal, Mother does not dispute Father's explanation that such an order was entered on April 3, 2014.

Upon subsequent motions filed by Mother in 2014, the trial court entered orders clarifying provisions of the December 2010 PPP as to payment of the Children's travel expenses, the ability of the Children to travel via airplane unaccompanied, and winter break co-parenting time. Although Mother's November 2013 petition had been dismissed, in November 2014, Mother filed, *inter alia*, a motion to amend her November 2013 petition, again alleging a material change in circumstance. As noted by the trial court in an order entered January 16, 2015, Mother subsequently voluntarily withdrew her motion to amend the November 2013 petition.

On February 13, 2015, Mother commenced the instant action by filing a petition to modify the December 2010 PPP. She asserted that a substantial and material change in circumstance had occurred since entry of the 2010 PPP, averring, *inter alia*, that the Children's living conditions with Father were unsatisfactory and that Father had failed to "supervise" the Children sufficiently to prevent the parties' daughter from breaking her arm when she fell from a bunk bed. Mother also alleged that Father had failed to cooperate with the trial court's clarifying order that the Children could travel by air unsupervised and with a provision of the December 2010 PPP that Father was to pay for the Children's travel to New Mexico during the scheduled co-parenting time with Mother. Mother requested that she be designated the primary residential parent. Father filed an answer to Mother's petition, denying all substantive allegations.

Mother filed an amended petition on September 4, 2015. In her amended petition, Mother stated, *inter alia,* that she was willing to continue paying the $882.00 per month in child support she was currently paying so that Father could more easily afford to visit the Children in New Mexico if she were the primary residential parent. In his response to the amended petition, Father averred that Mother was improperly attempting to exchange child support payments for parenting time with the Children. Mother subsequently filed a motion on November 13, 2015, to establish Thanksgiving visitation.

The trial court conducted a bench trial over the course of three days on November 20, 2015; June 3, 2016; and August 5, 2016. Following the second day of hearings, the court entered an order on June 6, 2016, appointing attorney Amanda McCulloch as a guardian *ad litem*. The court also directed that the Children were to be present for the next hearing date. The Children subsequently testified in chambers on the final hearing date. Although no record of the Children's testimony was made, Mother acknowledges

3

that the Children expressed their desire that Father remain their primary residential parent.

In an order entered January 24, 2017, the trial court found that a material change in circumstance had occurred since entry of the December 2010 PPP, thereby necessitating a change in the residential co-parenting schedule. As to the material change, the court specifically found that Mother and Father had each respectively remarried and relocated.[1] The court concomitantly entered a permanent parenting plan order ("2017 PPP"), modifying the residential co-parenting schedule to reduce the number of Mother's co-parenting days from 150 to 90. Mother's annual co-parenting time is set forth in the 2017 PPP specifically as follows:

| | |
|---|---|
| June 1 through July 31 -- | 61 days |
| December 26 through January 3 -- | 9 days |
| Thanksgiving (Wed. to Sun.) -- | 5 days |
| Mother's Day weekend -- | 2 days |
| Fall Break -- | 7 days |
| Spring Break -- | 7 days |

As Mother notes, the actual number of annual days provided to Mother in the 2017 PPP totals 91.

The days provided to Mother are designed to allow her to exercise co-parenting time in New Mexico. The 2017 PPP includes the following provision concerning transportation for the Children:

The children shall travel between their parents' respective homes/(i.e., to/from the nearest major city with an airport that permits one-way flights between said cities) via airplane. The mother shall hereinafter be solely responsible for purchasing her son['s] airfare, and the Father shall hereinafter be solely responsible for purchasing his daughter['s] airfare. The parties shall coordinate flight arrangements to facilitate both children being able to travel together on the same flights, wherever possible. Mother is responsible for booking all flights, and Father shall provide Mother with a means to purchase [the daughter's] airfare at least 30 days in advance of any scheduled flight.

---

[1] It appears, however, that Mother and Father each still reside in the same general geographic area as they did upon entry of the December 2010 PPP. Mother continues to reside in New Mexico, and Father continues to reside in Tennessee.

4

In its January 24, 2017 order, the trial court also found that Mother's allegations regarding environmental conditions in Father's home were not supported by the evidence. The court did find that Father had failed to comply with the travel arrangements set forth in the December 2010 PPP by insisting on driving the Children to a meeting point in Oklahoma for the transfer to Mother, thus cutting into Mother's co-parenting time, and by failing to split the cost of the Children's travel with Mother. As to the number of co-parenting days that Mother had actually exercised under the December 2010 PPP, the court stated the following:

> The Court moreover finds that the parties have failed to adhere to the Parenting Plan previously set forth in that the Mother has only been given the children no more than 109 days of the 150 days to which she has been entitled in any given year since 2011. Part of this may be due to error on the part of the parties when the Parenting Plan was initially drafted; however, a portion of it is undoubtedly due to the Father's failure to comply with the travel arrangements as ordered by this Court in 2015.[2]

The 2017 PPP includes the following special provision regarding Mother's ability to visit the Children in Tennessee beyond her scheduled co-parenting time in New Mexico:

> The Mother shall, in addition to the specified visits, also be allowed additional parenting time if she voluntarily visits Tennessee at her own expense and desires visitation with her children during non-school hours that are agreeable with Father. Father shall not unreasonably withhold the child(ren) from their Mother at these times.

As to child support, the 2017 PPP provides that Father's and Mother's respective gross monthly incomes are "as previously set forth in Parenting Plan of 12/15/2010 unless and until further order of the Child Support Court." Under the section labeled, "Federal Income Tax Exemption," the box is checked by "father is the parent receiving child support." Otherwise, however, neither the trial court's January 24, 2017 order nor the 2017 PPP mention the amount of Mother's child support obligation, and no child support worksheet is attached, despite the statement in the 2017 PPP that "[t]he Child Support Worksheet shall be attached to this Order as an Exhibit." Mother timely appealed to this Court, presenting as her sole issue the trial court's modification of the residential co-parenting schedule to reduce the number of her co-parenting days from 150 to 90.

---

[2] The trial court did not find Father in contempt of court for violating the travel arrangements as previously ordered by the court, and no issue has been raised concerning contempt.

5

## II. Issues Presented

Mother presents one issue on appeal, which we have restated as follows:

1. Whether the trial court erred by modifying the residential co-parenting schedule to reduce the number of Mother's annual co-parenting days with the Children.

Father presents one additional issue, which we have similarly restated as follows:

2. Whether, for child support purposes, the trial court properly set Mother's co-parenting days to reflect the actual number of annual co-parenting days she will enjoy.

## III. Standard of Review

We review a non-jury case *de novo* upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). We review questions of law *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

Determinations regarding child support are reviewed under an abuse of discretion standard. *See Mayfield v. Mayfield*, 395 S.W.3d 108, 114-15 (Tenn. 2012); *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). As this Court has explained:

> Prior to the adoption of the Child Support Guidelines, trial courts had wide discretion in matters relating to child custody and support. *Hopkins v. Hopkins*, 152 S.W.3d 447, 452 (Tenn. 2004) (Barker, J., dissenting). Their discretion was guided only by broad equitable principles and rules which took into consideration the condition and means of each parent. *Brooks v. Brooks*, 166 Tenn. 255, 257, 61 S.W.2d 654, 654 (1933). However, the adoption of the Child Support Guidelines has limited the courts' discretion substantially, and decisions regarding child support must be made within the strictures of the Child Support Guidelines. *Berryhill v. Rhodes*, 21 S.W.3d 188, 193 (Tenn. 2000); *Jones v. Jones*, 930 S.W.2d 541, 545 (Tenn. 1996); *Smith v. Smith*, 165 S.W.3d 279, 282 (Tenn. Ct. App. 2004).

6

* * *

Because child support decisions retain an element of discretion, we review them using the deferential "abuse of discretion" standard. This standard is a review-constraining standard of review that calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed. *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000); *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222-23 (Tenn. Ct. App. 1999). Appellate courts do not have the latitude to substitute their discretion for that of the trial court. *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). Thus, a trial court's discretionary decision will be upheld as long as it is not clearly unreasonable, *Bogan v. Bogan*, 60 S.W.3d 721, 733 (Tenn. 2001), and reasonable minds can disagree about its correctness. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000). Discretionary decisions must, however, take the applicable law and the relevant facts into account. *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). Accordingly, a trial court will be found to have "abused its discretion" when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003); *Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn. 2001); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999).

*Richardson*, 189 S.W.3d at 725.

Regarding adherence to the Child Support Guidelines, this Court has explained:

In Tennessee, awards of child support are governed by the Child Support Guidelines ("the Guidelines") promulgated by the Tennessee Department of Human Services Child Support Services Division. Tenn. Code Ann. § 36-5-101(e)(2). Tennessee's Child Support Guidelines have the force of law. *Jahn v. Jahn,* 932 S.W.2d 939, 943 (Tenn. Ct. App. 1996). Statutes and regulations pertaining to child support are intended to "assure that children receive support reasonably consistent with their parent or parents' financial resources." *State ex rel. Vaughn v. Kaatrude,* 21 S.W.3d 244, 248-49 (Tenn. Ct. App. 2000); *see also* Tenn. Comp. R. & Regs. 1240-02-04.01(3)(e). Courts are therefore required to use the child support

7

guidelines "to promote both efficient child support proceedings and dependable, consistent child support awards." *Kaatrude,* 21 S.W.3d at 249; *see also* Tenn. Code Ann. § 36-5-101(e); Tenn. Comp. R. & Regs. 1240-02-04-.01(3)(b), (c).

*Sykes v. Sykes,* No. M2012-01146-COA-R3-CV, 2013 WL 4714369, at *2 (Tenn. Ct. App. Aug. 28, 2013) (footnote omitted).

## IV.  Finality of Trial Court's Judgment

As a threshold matter, we address, *sua sponte*, the issue of whether the trial court's January 2017 PPP and concomitantly entered order constitute a final judgment over which this Court has subject matter jurisdiction.  *See Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 559 (Tenn. 1990) ("Unless an appeal from an interlocutory order is provided by the rules or by statute, appellate courts have jurisdiction over final judgments only."). Neither the 2017 PPP nor the corresponding order include an order addressing child support, and no Child Support Guidelines worksheet has been attached to the 2017 PPP, despite the inclusion in the 2017 PPP of a statement that "[t]he Child Support Worksheet shall be attached to this Order as an Exhibit."  Although the section entitled "Federal Income Tax Exemption" in the 2017 PPP has a checked box by Father as "the parent receiving child support," the section entitled "Child Support" has no amount of child support obligation set and is also missing any indication that Mother is the party ordered to pay child support.

When questioned during oral argument, Father's counsel stated that he believed the 2017 PPP included a provision that child support would remain as in the December 2010 PPP until modified by the child support magistrate.  However, the sole provision in the 2017 PPP referencing a continuation of the December 2010 PPP child support findings states:

> Father's <u>gross monthly income</u> is $ as previously set forth in Parenting Plan of 12/15/2010 unless and until further order of the Child Support Court.

> Mother's <u>gross monthly income</u> is $ as previously set forth in Parenting Plan of 12/15/2010 unless and until further order of the Child Support Court.

(Emphasis added; blank dollar amounts in original.)  The 2017 PPP and accompanying order do not contain a statement that the child support obligation would remain the same as in the December 2015 PPP, and no calculations pursuant to the Child Support Guidelines are included.  During oral argument, neither party was able to provide

information regarding any subsequent child support proceedings related to the trial court's modification of the residential co-parenting schedule in this action.

We also note that although Mother did not request a reduction in child support in her amended modification petition, she did raise the issue inasmuch as she offered to continue paying the same amount of support even if designated as the primary residential parent. In his answer to this amended petition, Father stated the following in relevant part:

> By way of positive averment, Father would aver that it is both unlawful and improper for the Mother to attempt to offer child support payments in exchange for the children. Tennessee law is clear that a correct child support calculation should be submitted with a permanent parenting plan, reflecting an accurate day count and income for both parents.

On appeal, Father has raised the issue of whether, for purposes of calculating child support, the trial court properly reduced Mother's co-parenting days to more closely reflect the purported number of co-parenting days she had been exercising. Father has also asserted that Mother's real motivation on appeal is to reduce her child support obligation, an allegation that Mother has vehemently denied. The parties' appellate pleadings thus do not indicate that the issue of child support has been resolved. Furthermore, the trial court has not certified the 2017 PPP and accompanying order as a final judgment pursuant to Tennessee Rule of Civil Procedure 54.02.

In a recent case in which a juvenile court had set child support in a 2012 proceeding outside the context of the 2014 custody order at issue on appeal, this Court dismissed the appeal for lack of subject matter jurisdiction, explaining in relevant part:

> The issue of child support should have been revisited in the parenting plan adopted pursuant to the December 22, 2014 order. *See Schreur v. Garner*, No. M2010-00369-COA-R3-CV, 2011 WL 2464180, at *6 (Tenn. Ct. App. June 20, 2011) (noting that the "change in the residential parenting schedule was the trigger for the modification of child support"). If, on reconsideration of the child support issue, the trial court found a significant variance, it should have modified the support obligation pursuant to the Child Support Guidelines. Because the trial court did not revisit the child support issue incident to its modification of the parenting plan, the December 22, 2014 order is not a final judgment as it does not adjudicate all issues. Accordingly, we do not have jurisdiction to hear this appeal.

In *Leonardo v. Leonardo,* No. M2014-00372-COA-R3-CV, 2015 WL 3852802 (Tenn. Ct. App. June 18, 2015), *perm app. granted* (Tenn. Nov. 24, 2015), this Court addressed the issue of child support following the modification of a permanent parenting plan in a post-divorce case. In addition to arguing that the trial court erred in modifying the parties' parenting plan, the appellant/mother in *Leonardo* asserted error due to the trial court's *sua sponte* decision to modify the father's child support obligation in the absence of any pleading requesting such relief. *Id.* at *3. In *Leonardo,* the majority affirmed the trial court's decision to modify child support in light of the modification to the parties' parenting schedule. In pertinent part, the majority opinion concluded that: "[A] petition to modify visitation time or the primary residential parent necessitates a recalculation of child support so long as the opposing party received adequate notice of the petition and so long as there is a significant variance in accordance with the Tennessee Child Support Guidelines." *Id.* at *7. Although our State Supreme Court granted permission to appeal in *Leonardo* and vacated the majority opinion solely with respect to the modification of child support, we do not interpret the Supreme Court's action in *Leonardo* as a reversal of our holding that a change in a child's residential schedule is sufficient to require a trial court to revisit child support and modify support if a significant variance exists. Indeed, the Supreme Court remanded the case to the trial court "with the direction that the trial court permit discovery and conduct a hearing on the issue of the appropriateness of any modification of child support and the proper amount of child support if it is determined that child support is appropriately subject to modification." *Leonardo v. Leonardo,* No. M2014-00372-SC-R11-CV (Tenn. Nov. 24, 2015). Had the Supreme Court disagreed with our substantive holding in *Leonardo,* it would have reversed this Court or would have determined that the issue of child support was not before the trial court and thereby negated the requirement that a trial court revisit child support when it changes a residential parenting schedule. If the Supreme Court had disagreed with our legal position on that issue, there would have been no need for its remand for discovery and a hearing on child support. As we interpret it, the Supreme Court's mandate that the trial court inquire into the "appropriateness of any modification" relates to whether a significant variance existed, not to whether a modification was appropriate in the absence of a pleading requesting relief related to child support.

Failing to require a trial court to revisit child support incident to a modification of the parenting schedule poses a serious threat to children's welfare. "Child support payments are for the benefit of the child, and both

parents have a duty to support their minor children." *Hopkins v. Hopkins*, 152 S.W.3d 447, 490 (Tenn. 2004) (citation omitted). Holding otherwise would only undermine our trial courts' authority to exercise continuing jurisdiction over the care of the children of this State.

*In re Gabrielle R.*, No W2015-00388-COA-R3-JV, 2016 WL 1084220, at *3 (Tenn. Ct. App. Mar. 17, 2016).

Determining *In re Gabrielle R.* to be on point with the instant action, we conclude that because the trial court in its judgment has modified the residential co-parenting schedule but failed to address the issue of a corresponding modification in child support, the judgment is not final. We therefore do not have subject matter jurisdiction to consider this appeal. *See Bayberry Assocs.*, 783 S.W.2d at 559.; *In re Gabrielle R.*, 2016 WL 1084220, at *4.

## V. Conclusion

The appeal of this matter is dismissed without prejudice to the filing of a new appeal once a final judgment has been entered. This case is remanded to the trial court for further proceedings consistent with this opinion. Costs on appeal are taxed to the appellant, Shellie Nicole Bouma Hensley.

_____
THOMAS R. FRIERSON, II, JUDGE

11